## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BELL HELICOPTER TEXTRON INC.,**<br>**a Delaware corporation, P.O. Box 482**<br>**Fort Worth, TX 76101, and**<br>**BELL HELICOPTER TEXTRON**<br>**CANADA LTD., a Canadian corporation,**<br>**12800 rue de l'Auenir, Mirabel, QC,**<br>**J7J 1R4**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN,**<br>**a foreign nation, IRAN AIRCRAFT**<br>**MANUFACTURING COMPANY,**<br>**an Iranian corporation,**<br>**Km 5 Karaj Special Road**<br>**(Jadeh Makhsouse Karaj), Tehran, Iran**<br>**IRAN HELICOPTER SUPPORT**<br>**& RENEWAL CO., an Iranian**<br>**corporation, Daryaye Nour Street,**<br>**Corner of Kouche Haftom, Next to**<br>**Ghodousi Judicial Complex,**<br>**Tehran, Iran**<br><br>                    **Defendants.** | **Civil Action No. _____** |

### PLAINTIFFS' ORIGINAL COMPLAINT

TO THIS HONORABLE COURT:

Plaintiffs Bell Helicopter Textron Inc. and Bell Helicopter Textron Canada Ltd. (collectively, "Bell") file their Original Complaint and for causes of action would respectfully show the Court as follows:

## 1.0

## JURISDICTION AND VENUE

1.1    This is an action for design patent infringement, trade dress infringement and dilution arising under the laws of the United States.

1.2    This Court has jurisdiction pursuant to 28 U.S.C. §1605, 1331, 1332, and 1338 and 15 U.S.C. §1121.

1.3    Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## 2.0

## THE PARTIES

2.1    Plaintiff Bell Helicopter Textron Inc. ("Bell") is a Delaware corporation with its principal place of business in Fort Worth, Texas.

2.2    Plaintiff Bell Helicopter Textron Canada Ltd. ("Bell") is a Canadian federal corporation with its principal place of business in Mirabel, Quebec, Canada.

2.3    Defendant Islamic Republic of Iran ("IRI") is a foreign nation which operates various manufacturing facilities within the territory of the Islamic Republic of Iran. IRI may be served in accordance with the terms of Foreign Sovereign Immunities Act (FSIA),28 U.S.C. § 1605 and under the service provisions of 28 U.S.C. §1608(a)(3) or (a)(4).

2.4    Defendant Iran Aircraft Manufacturing Company ("HESA") is an aircraft manufacturer which, on information and belief, is an instrumentality and/or wholly owned and operated corporation of the Islamic Republic of Iran with its principal place of business in Iran. HESA may be served in accordance with the terms of Foreign Sovereign Immunities Act (FSIA),28 U.S.C. § 1605 and under the service provisions of 28 U.S.C. §1608(a)(4), §1608(b)(2) & §1608(b)(3)(B) as well as the District of Columbia Long-arm Statute, D.C.Code § 13-421 *et seq*. The address for service in Iran is: Km 5 Karaj Special Road (Jadeh Makhsouse Karaj), Tehran, Iran.

2.5    Defendant Iran Helicopter Support & Renewal Company ("ANHA") is an aircraft manufacturer which, on information and belief, is an instrumentality and/or wholly owned and operated corporation of the Islamic Republic of Iran with its principal place of business in Iran. PANHA may be served in accordance with the terms of Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605 and under the service provisions of 28 U.S.C. §1608(a)(4), §1608(b)(2) & §1608(b)(3)(B) as well as the District of Columbia Long-arm Statute, D.C.Code § 13-421 *et seq*. The address for service in Iran is: Daryaye Nour Street, Corner of Kouche Haftom, Next to Ghodousi Judicial Complex, Tehran, Iran.

2

## 3.0

## <u>BACKGROUND FACTS</u>

3.1    Plaintiffs design, manufacture and/or sell helicopters under the name Bell Helicopter, which helicopters bear a distinctive trade dress identifying the helicopter as a Bell manufactured aircraft. Said helicopters bearing distinctive trade dress include Bell Helicopter Model 205, Model 212, Model 412, Model 206, Model 206 L3, Model 407, etc. (hereinafter sometimes referred to as "Products").

3.2    Plaintiffs own U.S. Design Patent Nos. D 388,048, D 375,077, and D 363,054. Plaintiff Bell is the sole owner of the entire right, title, and interest in and to the design patents. Bell helicopters bearing distinctive design patents include Bell helicopter Model 206, Model 206 L3, Model 407, etc. *See* Exhibits "B", "C" and "D".

3.3    Plaintiffs' helicopters have received all FAA and other required approvals.

3.4    Genuine Bell parts are manufactured and sold bearing the Bell trade dress and patent numbers where applicable.

3.5    The Bell design patents and trade dress identify Bell as the source of high quality products.

3.6    Defendants have commenced the manufacture, distribution, offer for sale, and sale of helicopters and helicopter parts, through the theft and misappropriation of such trade secrets in infringement of the Bell trade dress and patents. Defendants have denominated their counterfeit of Bell Helicopter Model 206, Bell Helicopter Model 206 L3, Bell Helicopter Model 407 as Defendants' model Shahed 276. *See* Exhibit "A". On information and belief, Defendants are also manufacturing counterfeits of Bell Helicopter Model 205, and Bell Model 209 as Defendants' model Shabaviz 275, and model 2061 and 2091.

3.7    The parts and helicopters manufactured, reconstructed, distributed, offered for sale, and sold by Defendants ("the Accused Products") include the Bell trade dress, trademarks, design patents or marks confusingly similar thereto, patents and are the result, in whole or in part, of Defendants' theft of Bell's protected intellectual property.

3.8    Defendants' activities regarding the Accused Products are a use in commerce.

3.9    The retention and use of Bell marks on the Accused Products is deceptive and misleading as to the origin of the Accused Products, and likely to cause confusion to

3

subsequent or downstream purchasers, as well as to person observing the products.

3.10   Defendants' activities are not now nor have they ever been associated with or sanctioned by Bell.

3.11   Defendants have never been authorized by Bell to manufacture, reconstruct, distribute, offer for sale, or sell parts bearing the Bell trademark, or utilizing Bell's design patents or trade dress.

3.12   On November 12, 1975, Bell Helicopter Textron Inc. entered into a joint venture contract with the Islamic Republic of Iran's predecessor-in-interest, the Imperial Government of Iran. On information and belief, the Islamic Republic of Iran through its wholly owned instrumentalities, Iran Aircraft Manufacturing Company and Iran Helicopter Support & Renewal Co., are engaged in illegally copying Bell's designs and aircraft through the use of technology and processes either limited to use for the aircraft contemplated under the 1975 agreement, and in violation of said agreement, or through other misappropriation of Bell's trade secrets and proprietary data.

**4.0**

**TRADE DRESS / TRADE DRESS DILUTION**

4.1   Plaintiffs incorporate by reference the allegations of paragraphs 1.1 through 3.12.

4.2   The cause of action set forth herein arises under the Lanham Act of the United States, 15 U.S.C. §1051 et seq. Jurisdiction is founded on 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1332, and 1338.

4.3   Beginning in 1967, Bell has sold its distinctive Products. Upon information and belief, the unique, arbitrary (and non functional) features of Bell's products have caused the product to take on secondary meaning in the minds of customers, and resulted in a belief that Bell's products have a single source of origin.

4.4   Defendants have distributed its confusingly similar, unauthorized copies of Plaintiffs' products ("the Accused Products"). *See*, as one example, Exhibit "A".

4.5   On information and belief, defendants were aware of Bell's proprietary product design.

4.6   Defendants have infringed upon the right of Plaintiffs by importing, offering for sale, selling, advertising, and/or distributing the Accused Products whose nonfunctional design is confusingly similar to that of the nonfunctional design of Plaintiffs' product.

4.7     Defendants' activities are likely to cause confusion, mistake, or deception in the minds of consumers as to the source or origin of the products offered, advertised, distributed and sold by Defendants.

4.8     Given that consumers believe that Bell's products have a single source, consumers are likely to believe that Defendants' products originated with Bell or that Bell and the Defendants' are affiliated or have common sponsorship.

4.9     On or about July 10, 2003, Bell gave formal written notice of infringement to Defendants, informing Defendants that its sale of unauthorized copies of Plaintiffs' products constitute trade dress infringement, and design patent infringement, and requesting Defendants to cease its sale of unauthorized copies of Plaintiffs' product.

4.10    Defendants' infringing activities have caused and/or will cause Bell monetary harm.

4.11    Defendants' continued exportation, distribution, and sales of confusingly similar copies of Plaintiffs' products in the manner described above causes Bell irreparable injury as to which it has no adequate remedy at law.

4.12    Defendants' actions were taken in willful and malicious disregard of Plaintiffs' rights.

4.13    The activities of Defendants as alleged in this Complaint constitute willful and intentional infringement of the Bell trademarks in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

4.14    Defendants have derived and/or will continue to derive and receive from the above alleged acts of infringement, profits and revenues in an amount that is not presently known to Plaintiffs. Further, such acts of infringement were made with knowledge of their capacity to deceive and were thus committed intentionally and willfully. By reason of the above acts of infringement, Plaintiffs have been and will continue to be damaged in an amount to be determined at trial.

4.15    The activities of Defendants as alleged in this Complaint have caused and will continue to cause irreparable harm to Bell for which Bell has no adequate remedy at law. Accordingly, Bell is entitled to injunctive relief.

**5.0**

**DESIGN PATENT INFRINGEMENT**

5.1     Plaintiffs incorporate by reference the allegations of paragraphs 1.1 through 4.15.

5.2     This cause of action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq. Subject matter jurisdiction is founded on 28 U.S.C. §§ 1331, 1332, and 1338.

5

5.3   U.S. Design Patent No. D 388,048 issued on December 23, 1997 and a copy is attached as Exhibit "B". Plaintiffs are the sole owners of the entire right, title, and interest in and to the D 388,048 patent.

5.4   U.S. Design Patent No. D 375,077 issued on October 29, 1996 and a copy is attached as Exhibit "C". Plaintiffs are the sole owners of the entire right, title, and interest in and to the D 375,077 patent.

5.5   U.S. Design Patent No. D 363,054 issued on October 10, 1995 and a copy is attached as Exhibit "D". Plaintiffs are the sole owner of the entire right, title, and interest in and to the D 363,054 patent.

5.6   Defendants' manufacture, use and sale of its infringing products in commerce have been without the consent of the Plaintiffs. Defendants' application of the Plaintiffs' patented design to Defendants' products constitutes infringement.

5.7   Plaintiffs have placed the required statutory notice on all products manufactured or sold by Plaintiffs under the D 388,048, D 375,077, and D 363,054 patents, and has given written notice to Defendants of infringement.

5.8   On information and belief, Defendant was fully aware of Plaintiffs' D 388,048, D 375,077, and D 363,054 patents at the time Defendant began its infringing activities.

5.9   Defendants infringing activities have caused and/or will cause the Plaintiffs monetary harm.

5.10  Defendants continued infringement of Plaintiffs' design patents causes Plaintiffs irreparable injury as to which Plaintiffs have not adequate remedy at law.

5.11  Defendants' actions were taken in willful and malicious disregard of Plaintiffs' rights.

**6.0**

**DILUTION OF A FAMOUS MARK, IN VIOLATION OF 15 U.S.C. § 1125(C)**

6.1   Plaintiffs incorporate by reference the allegations of paragraphs 1.1 through 5.11.

6.2   This cause of action arises under 15 U.S.C. § 1125(c).

6.3   Defendants' manufacture, use and sale of its infringing products in commerce have been without the consent of the Plaintiffs. Defendants' application of the Plaintiffs' patented design to Defendants' products is likely to cause confusion, and/or to cause mistake, and/or to deceive Bell's customers and potential customers as to the products origin, or the origin, sponsorship, or approval of said goods by Bell.

6.4    Bell has been and will continue to suffer damages by the Defendants' acts.

6.5    Bell's aircraft designs are distinctive and are not functional.

6.6    Because of the Defendants' actions, Bell is entitled to injunctive relief as set forth in 15 U.S.C. § 1116.

6.7    Because of the Defendants' actions willfully intended to trade on the Bell's reputation and to cause dilution of Bell's famous mark, Bell is entitled to the remedies set forth in 15 U.S.C. §§ 1117 and 1118.

**7.0**

**<u>DEMAND FOR RELIEF</u>**

WHEREFORE Plaintiffs Bell Helicopter Textron Inc. and Bell Helicopter Textron Canada Ltd. pray for relief as follows:

A.    That Defendants be adjudged to have infringed Bell's design patent and trade dress;

B.    Enjoining Defendants from further activities that would infringe Plaintiffs' design patent and trade dress;

C.    For an accounting of defendants' profits and an award of damages by reason of Defendants' conduct;

D.    For an award of trebled, exemplary damages against Defendants in accordance with the Lanham Act;

E.    For an award of attorney's fees, costs, prejudgment and post judgment interest; and

F.    That Plaintiffs be awarded such other further relief as this Court may deem just, equitable and proper.

Respectfully submitted,

_____
D. Lee Rutland # 385761
Robert S. Morter # 474337
WHARTON LEVIN EHRMANTRAUT
& KLEIN, P.A.
P.O. Box 551
104 West Street
Annapolis, Maryland 21404-0551
Telephone     (410) 263-5900
Facsimile     (410) 280-2230

Stephen C. Howell
Texas Bar No. 10107700
Cary Dorman
State Bar No. 06007200
HOWELL, DORMAN & SAMS, PC
307 W. 7th Street, Suite 1918
Fort Worth, Texas
Telephone    (817) 348-9800
Facsimile     (817) 348-0384

Attorneys for Plaintiffs

8

# EXHIBIT "A"

US00D388048S

# United States Patent [19]

## Taylor et al.

[11]  **Patent Number:**   **Des. 388,048**

[45]  **Date of Patent:**   **\*\*Dec. 23, 1997**

[54]  **HELICOPTER**

[75]  Inventors: **Rodney Sherwood Taylor; Bobby Alton Collins; Timothy Myron Hazen,** all of Bedford; **Walter Charles Joiner,** Arlington, all of Tex.

[73]  Assignee: **Bell Helicopter Textron Inc.,** Fort Worth, Tex.

[\*\*]  Term:    **14 Years**

[21]  Appl. No.: **54,389**

[22]  Filed:    **May 13, 1996**

[51]  **LOC (6) Cl.** ....................................................... **12-07**

[52]  **U.S. Cl.** ........................................... D12/328; D12/327

[58]  **Field of Search** ................................... D12/319, 326, D12/327, 328, 329; 244/17.11, 17.19, 17.21

[56]              **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D. 239,710 | 4/1976 | Garrison . |
| D. 242,338 | 11/1976 | Gilday . |
| D. 278,227 | 4/1985 | Johnston, Jr. . |
| D. 332,078 | 12/1992 | Shallene . |
| D. 357,895 | 5/1995 | Arnold et al. . |
| D. 363,054 | 10/1995 | Taylor et al. . |
| D. 375,077 | 10/1996 | Taylor et al. ........................ D12/327 |
| 4,809,930 | 3/1989 | Ballerio et al. . |

| | | |
|---|---|---|
| 5,093,677 | 3/1992 | McMahon . |
| 5,209,430 | 5/1993 | Wilson et al. . |

### OTHER PUBLICATIONS

Jane's All the World's Aircraft. 1995–1996, p. 30, Canada–Aircraft, "Twin–turbine Bell 407T".

Jane's All the World's Aircraft, 1995–1996, p. 25, Aircraft: Canada, Bell 2064–4 "Long Ranger IV".

Canadian Design Patent No. 35187, Mar. 29, 1972 United Aircraft Corporation, East Hartford, Conn. USA.

*Primary Examiner*—Kay H. Chin
*Attorney, Agent, or Firm*—Mark D. Perdue; Robert A. Felsman

[57]              **CLAIM**

The ornamental design for a helicopter, as shown and described.

### DESCRIPTION

FIG. 1 is a left side view of the helicopter;
FIG. 2 is a right side view thereof;
FIG. 3 is a front view thereof;
FIG. 4 is a rear view thereof;
FIG. 5 is a top view thereof; and,
FIG. 6 is a bottom view thereof.
Portions of the rotor blades in FIGS. 5 and 6 are shown broken away for convenience of illustration.

**1 Claim, 3 Drawing Sheets**



**U.S. Patent**    Dec. 23, 1997    Sheet 1 of 3    **Des. 388,048**



**U.S. Patent**    Dec. 23, 1997    Sheet 2 of 3    **Des. 388,048**



*FIG. 3*



*FIG. 4*



*FIG. 5*

*FIG. 6*

US00D375077S

# United States Patent [19]

## Taylor et al.

[11]  **Patent Number:**  **Des. 375,077**

[45]  **Date of Patent:**  **٭٭Oct. 29, 1996**

[54]  **HELICOPTER**

[75]  Inventors: **Rodney S. Taylor**, Bedford; **Walter C. Joiner**, Arlington, both of Tex.

[73]  Assignee: **Bell Helicopter Textron Inc.,** Fort Worth, Tex.

[**]  Term:  **14 Years**

[21]  Appl. No.: **33,952**

[22]  Filed:  **Jan. 24, 1995**

[52]  **U.S. Cl.** .......................................................... **D12/327**

[58]  **Field of Search** .................................. D12/319, 326, D12/327, 328, 329; 244/17.11, 17.19, 17.21

[56]  **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D. 239,710 | 4/1976 | Garrison . |
| D. 242,338 | 11/1976 | Gilday . |
| D. 278,227 | 4/1985 | Johnston, Jr. . |
| D. 332,078 | 12/1992 | Shallene . |
| D. 357,894 | 5/1995 | Arnold et al. ........................ D12/328 |
| D. 363,054 | 10/1995 | Taylor et al. ........................ D12/326 |
| 4,809,930 | 3/1989 | Ballerio et al. . |
| 5,093,677 | 3/1992 | McMahon . |

5,209,430   5/1993  Wilson et al. .

### OTHER PUBLICATIONS

Canadian Design Patent No. 35187, Mar. 29, 1972 United Aircraft Corporation, East Hartford, Conn. USA.

*Primary Examiner*—Kay H. Chin
*Attorney, Agent, or Firm*—Robert A. Felsman; Mark D. Perdue

[57]  **CLAIM**

The ornamental design for a helicopter, as shown and described.

### DESCRIPTION

FIG. **1** is a right side elevational view of the helicopter showing our new design;
FIG. **2** is a left side elevational view thereof;
FIG. **3** is a front elevational view thereof;
FIG. **4** is a rear elevational view thereof;
FIG. **5** is a top plan view thereof; and,
FIG. **6** is a bottom plan view thereof.
Portions of the rotor blades in FIGS. **5** and **6** are shown broken away for convenience of illustration.

**1 Claim, 3 Drawing Sheets**



**U.S. Patent**        Oct. 29, 1996        Sheet 1 of 3        **Des. 375,077**



FIG. 1

FIG. 2



*FIG. 3*



*FIG. 4*

**U.S. Patent**    Oct. 29, 1996    Sheet 3 of 3    **Des. 375,077**



FIG. 5

FIG. 6

US00D363054S

# United States Patent [19]

## Taylor et al.

| | |
|---|---|
| [11] | **Patent Number:** **Des. 363,054** |
| [45] | **Date of Patent:** **∗∗Oct. 10, 1995** |

[54] **HELICOPTER**

[75] Inventors: **Rodney S. Taylor**, Bedford; **Walter C. Joiner**, Arlington, both of Tex.

[73] Assignee: **Bell Helicopter Textron Inc.**, Fort Worth, Tex.

[**] Term: **14 Years**

[21] Appl. No.: **27,816**

[22] Filed: **Aug. 30, 1994**

[52] **U.S. Cl.** ........................................ **D12/327; D12/326**

[58] **Field of Search** ..................................... D12/319, 324, D12/323, 327; 244/17.11, 17.19, 17.21

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 186,796 | 12/1959 | Gluhareff | D12/324 |
| D. 206,734 | 1/1967 | Kesling | D12/327 |
| D. 239,710 | 4/1976 | Garrison . | |
| D. 242,338 | 11/1976 | Gilday . | |
| D. 267,227 | 4/1985 | Johnston, Jr. . | |
| D. 278,227 | 4/1985 | Johnston, Jr. | D12/327 |
| D. 332,078 | 12/1992 | Shallene . | |
| 3,902,688 | 9/1975 | Seibel et al. | 244/17.11 |
| 4,809,930 | 3/1989 | Ballerio | 244/17.11 |

| | | | |
|---|---|---|---|
| 5,093,577 | 3/1992 | McMahon | 354/74 |
| 5,209,430 | 5/1993 | Wilson et al. | 244/17.19 |

### OTHER PUBLICATIONS

Flight Int'l 24 Aug. 1972, p. 285 "Bell Model 2/2".
Canadian Design Pat. No. 35187, Mar. 29, 1972 United Aircraft Corporation, East Hartford, Conn. USA.

*Primary Examiner*—Kay H. Chin
*Attorney, Agent, or Firm*—Robert A. Felsman; Mark D. Perdue

[57] **CLAIM**

The ornamental design for a helicopter, as shown and described.

### DESCRIPTION

FIG. **1** is a left side elevational view of the helicopter showing our new design;
FIG. **2** is a right side elevational view thereof;
FIG. **3** is a front elevational view thereof;
FIG. **4** is a rear elevational view thereof;
FIG. **5** is a top plan view thereof; and,
FIG. **6** is a bottom plan view thereof.
Portions of the rotor blades in FIGS. **5** and **6** are shown broken away for convenience of illustration.

**1 Claim, 3 Drawing Sheets**



U.S. Patent          Oct. 10, 1995          Sheet 1 of 3          Des. 363,054



**U.S. Patent**     Oct. 10, 1995     Sheet 2 of 3     **Des. 363,054**



*FIG. 3*



*FIG. 4*



*FIG. 6*

*FIG. 5*

# EXHIBIT "B"

Page 23 of 24 RMLE Document ID: b6f1fe87222e9fe1 Printed 03/29/2006 Page 23 of 24

# E-3 AWACS IN DETAIL WITH CUTAWAY DRAWING

# AIR International

## A MORE INFORMED READ

# MiG-31
*Foxhound* Analysed



Sharpening the
# USAF's Talons

## ARA
**Wind Tunnels
for the World**



## AIRBUS A340 VS BOEING 777
### In Search of Long-Range Dominance

# Raytheon Aircraft
**Returns to Traditional Aircraft**

# Ekranoplans
**Russia's Wing-in-Ground Effects Vehicles**

December 2002 Vol 63 No 6   £3.30
Canada $10.25




9 770306 563134

# IRIAF two-seat F-5 conversion



Above: To fulfil IRIAF training requirements, local manufacturer HESA has begun converting single-seat F-5s into two-seat trainers, one such being 3.7019, formerly a single-seat reconnaissance RF-5A.

avionics to tyres and ground equipment, plus their support and overhaul services. Several of the major overhaul facilities, including Iran Air and Iran Aseman Airlines, are JAR145 (the European Joint Airworthiness Requirements) approval for aircraft maintenance) approved. Foreign companies attending the show included quite a number offering heavy maintenance, spares and training plus support for aircraft in service in Iran. One French company said the while the Iranian market had some difficulties, mostly political, in over 25 years of working here, payment had always been made, usually on time. Several others confirmed this.

Maintenance services were on offer from companies from France, Indonesia, Italy, Pakistan and Russia. Stork, the Fokker Services company and LET (Czech Republic) see worthwhile potential markets in Iran for their aircraft. Stork, for example, say that now there are over 50 Fokker aircraft serving in the country, with at least six Fokker 50s added in 2002 and a further six Fokker 100s now being readied for Iran Aseman Airlines. With the Fokker 100 now coming out of service with several of its major operators, these could provide a nucleus for much-needed fleet replacements in the country. Training services were also on display

in some quantity. Apart from Iranian flying schools and universities, companies from France, Italy, Holland and Russia were exhibiting at the show.

Russian industry was present only in small numbers, which was mainly attributed to hearing about the show at too late a stage. Iran should be a major market for Russia and the two production

factories present, the Kazan Helicopter Factory and Ulan Ude Aviation Factory, both producers of the Mil Mi-8 and Mi-17, felt their prospects in the market were good. Ulan Ude had first appointed an agent in Iran in 1991 and in 1999 secured an order from the Iranian

military for 30 Mi-171s. A second order, understood to be for a further 25, has just been signed. It also offered the new single seat Su-39, developed from the Su-25. Kazan Helicopters has touted their new Euromil Ansat, a light helicopter in the Bell 206 category, and the Mi-38, expected to enter production shortly.

Ukraine industry was present in strength, partially due to its growing partnership with Iran's HESA. The Antonov Design Bureau and the Kharkov factory brought the An-124 Ruslan to the show, together with a production An-140 in Aeromist colours and the first An-74TK-300

regional passenger jet. These were joined by an Iranian An-74TK-200 from a military institute.

Pakistan's Aircraft Manufacturing Factory displayed a Mushshak basic trainer. Sky Launch, a UK company, displayed glider launch equipment – it has already provided six units to Iran, and several balloons, gliders, microlights and parafoils were also displayed.

Several Iranian Airlines had stands, mostly offering maintenance services (including Iran Air and Iran Aseman), whilst Kish Air, one of the show's sponsors, promoted its flights and Payam offered airport services. US sanctions have affected Iranian commercial aviation more than any other sector. Research indicates that the country has a demand for 30 million passenger seat hours' (a hard-working 100-seat airliner flying 3,000 hours per year can cover just 1% of this), but the industry delivered only nine million in 1999. Russian aircraft, mostly Tu-154s, have supplemented the ageing

# Production Shahed 276 on show



Above: This production Shahed 276 was displayed at the show. A local development, obviously reverse-engineered from the Bell 206 JetRanger, the type is now been manufactured for light helicopter roles in Iran.

# An-74TK-200 in IRIAF service



Above: IRIAF An-74TK-200 15-2257, in a non-descript overall dirty white colour scheme, was the eighth example delivered to Iran for military duties out of a total of 15 ordered. This aircraft is operated by the Air Force Research Institute.

aircraft in service in the country, but passengers are not happy with the poor interiors of the Russian aircraft. "Although Iranian aviation has grown up on Boeings, (because they are not available to us due to the sanctions), Airbus has a strong opportunity to take this market. Whatever type is selected by Iran Air will have considerable advantages for other airlines in Iran," says Dr. Davood Keshavarzian, Chairman and CEO of Iran Air. "Unfortunately, Airbus management seems to be too conservative to take their opportunity". But the Knapsack Flying Kit deserves the prize for the most unusual exhibit. Designed by a young engineer and amateur pilot, it is a portable kit mounted in a knapsack for use by jumping from an aircraft or helicopter. When reasonable airspeed is reached, the aviator pulls open the knapsack and a small pair of wings fitted with a stabiliser and controls opens on his back and allows controlled flight and descent capable of covering quite a distance.