# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BELL HELICOPTER TEXTRON INC. *et al.*, | : | |
| Plaintiffs, | : | Civil Action No.: 06-1694 (RMU) |
| v. | : | |
| ISLAMIC REPUBLIC OF IRAN *et al.*, | : | |
| Defendants. | : | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I. INTRODUCTION

This case arises from the continued unauthorized use of the plaintiffs' trade dress by the Islamic Republic of Iran ("Iran"). The plaintiffs own the trade dress and intellectual property rights associated with the Bell Jet Ranger 206 helicopter and its derivatives (including, but not limited, to the Bell 206, 206A, 206A-1(OH-58A), 206B, 206B-1, 206L, 206L-1, 206L-3, 206L4, and 407 and their military variants OH-58, TH-57 and TH-67) including design patents. Iran, through its agents, has been misappropriating the plaintiffs' trade dress and design patents through its manufacture, distribution, and sale of helicopters. The plaintiffs seek damages from Iran for its infringement and dilution of their trade dress pursuant to the commercial activity exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1605(a)(2).

### A. Procedural Background

On September 29, 2006, the plaintiffs filed their complaint under the FSIA seeking an injunction and damages for Iran's infringement and dilution of their trade dress. *See generally* Compl. The plaintiffs effectuated service upon Iran through diplomatic channels in accordance with 28 U.S.C. § 1608(a)(3). *See* Return of Service/Aff. On October 10, 2007, the plaintiffs filed proof of service in compliance with statutory procedures and thereafter sought entry of

default on July 9, 2008, based upon Iran's failure to respond or enter an appearance. *See id*. Default was entered by the Clerk of the Court against Iran on March 31, 2009. *See* Clerk's Entry of Default.

On October 5, 2009, the court held an evidentiary hearing regarding the plaintiffs' request for damages. *See generally* Tr. Based on all of the evidence presented, the court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

1. Since 1966, the plaintiffs have designed, manufactured and/or sold helicopters which bear a distinctive trade dress identifying their helicopters as Bell manufactured aircraft. The plaintiffs' line of helicopters bearing this trade dress include Bell Helicopter Model 206 "Jet Ranger," and its derivatives (including, but not limited, to the Bell 206, 206A, 206A-1 (OH-58A), 206B, 206B-1, 206L, 206L-1, 206L-3, 206L4, and 407 and their military variants OH-58, TH-57 and TH-67 ("206 Model Helicopter Series")).

2. The plaintiffs own and have registered with the United States Patent and Trademark Office ("USPTO") U.S. Design Patent Nos. D 388,048, D 375,077 and D 363,054. The plaintiffs are the sole owners of the entire right, title and interest in and to the design patents. Bell helicopters bearing distinctive design patents include the Bell 206 Model Helicopter Series.

3. The plaintiffs have continuously utilized, advertised and promoted their trade dress since 1966.

4. Third party parts manufacturers have, with the plaintiffs' permission, advertised and promoted the plaintiffs' trade dress since 1967.

5. The 206 Model Helicopter Series's trade dress identifies the plaintiffs as the source of the products.

6. The plaintiffs' trade dress utilized in the 206 Model Helicopter Series is distinctive and famous.

7. The plaintiffs have manufactured and sold an estimated 9,730 helicopters worldwide bearing the 206 Model Helicopter Series trade dress.

8. Iran is a foreign sovereign that has engaged in commercial activity having a direct effect within the United States.

9. Beginning in 2001, thirty-six years after the plaintiffs first developed the Bell 206 Jet Ranger, Iran commenced manufacturing, distributing, offering for sale and selling counterfeit 206 Model Helicopter Series helicopters and helicopter parts.

10. Iran has denominated its counterfeit version of the 206 Model Helicopter Series as model Shahed 278 and its militarized version of the series, model Shahed 285.

11. The Shahed 278 and the Shahed 285 utilize the plaintiffs' trade dress without authorization or approval by the plaintiffs.

12. Iran's unauthorized use of the plaintiff's trade dress will likely result in consumer confusion.

13. Iran adopted the plaintiff's trade dress after it had become a famous mark.

14. Iran's use of the trade dress dilutes the plaintiffs' famous mark.

15. Iran has promoted its counterfeit 206 Model Helicopter Series helicopters at Iran's international air show held at Kish Island, Iran annually. International aircraft consumers attend this air show.

16. Iran has manufactured at least thirteen Shahed 278 and Shahed 285 helicopters.

17. The plaintiffs properly served Iran. The date of service is July 30, 2007.

18. Iran failed to respond to this lawsuit and the Clerk of the Court entered a default against it.

### III. CONCLUSIONS OF LAW

#### A. Legal Standard for Default Judgment Under the FSIA

A court shall not enter a default judgment against a foreign state "unless the claimant establishes his claim or rights to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232 (D.C. Cir. 2003). This "satisfactory to the court" standard is identical to the standard for entry of default judgments against the United States articulated in Federal Rule of Civil Procedure 55(e). *Hill v. Republic of Iraq*, 328 F.3d 680, 683 (D.C. Cir. 2003). In evaluating the plaintiffs' proof, the court may "accept as true the plaintiffs' uncontroverted evidence," *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000), including proof by affidavit, *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002).

#### B. Jurisdiction

The FSIA is the sole basis for jurisdiction over foreign sovereigns in the United States. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). The "commercial activity" exception provides that a foreign sovereign will not be immune to suit in U.S. courts where

> the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). The Supreme Court has held that when a foreign government acts not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's

4

actions are "commercial" within the meaning of the FSIA. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). More specifically, the determining factor is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Id* at 614. The court further notes that the FSIA establishes personal jurisdiction over a foreign-state defendant once the plaintiffs effect service of process and demonstrate that an exception to immunity applies. 28 U.S.C. §§ 1330(b), 1605, 1608; *Foremost-McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 442 (D.C. Cir. 1990). In the present case, the plaintiffs have demonstrated both that Iran engaged in commercial activity outside of the United States and that the commercial activity caused a direct effect in the United States.

Once a foreign state's immunity has been lifted under the FSIA's commercial activity exception and the court determines that jurisdiction is proper, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. Stated otherwise, § 1606 acts as a "pass-through" to substantive causes of action against private individuals that may exist in federal, state or international law. *See Dammarell*, 2005 WL 756090, at *8-10. Substantive causes of action are brought under applicable federal and state law, not the FSIA itself. *See Dammarell v. Islamic Republic of Iran,* 2005 WL 756090, at *8-10 (D.D.C. Mar. 29, 2005). The FSIA is "merely a jurisdiction-conferring provision that does not otherwise provide a cause of action against either a foreign state or its agents." *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1032 (D.C. Cir. 2004). In this case, 15 U.S.C. §§ 1051 *et seq*. ("the Lanham Act") provides a basis for Iran's liability.

## C. Liability

### 1. Trade Dress Infringement

To succeed on a claim for trade dress infringement under the Lanham Act, the plaintiffs must demonstrate (1) that they have a valid trade dress; (2) that their trade dress is "inherently distinctive" or that it has acquired "secondary meaning;" and (3) "that there is a substantial likelihood of confusion between the plaintiffs' mark and the alleged infringer's mark." *See Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006) (internal citations and quotations omitted); *see also* 15 U.S.C. § 1114(1)(a).

Based on the evidence presented, the plaintiffs have established a valid claim for trade dress infringement under the Lanham Act. The plaintiffs' trade dress are registered with the Patent and Trademark Office as U.S. Design Patent Nos. D 388,048, D 375,077, and D 363,054. Pl.'s Ex. 2. at U-FF. The plaintiffs own the trade dress of the Bell 206 Model Helicopter Series which are inherently distinctive and have acquired secondary meaning, Tr. at 29-32, and they have demonstrated that their trade dress of the 206 Model Helicopter Series is non-functional and is an "ornamental design," *id*. at 31-32. Iran's Shahed 278 and Shahed 285 helicopters are confusingly similar to that of the Bell 206 Model Helicopter Series and are likely to cause confusion to prospective Bell customers as to the source or origin of the products. *Id*. at 39-41, 44-46. Finally, Iran willfully and intentionally infringed of the plaintiffs' trade dress in violation of the Lanham Act. *Id*. at 16-20, 24-25.

### 2. Trade Dress Dilution

To establish a successful claim for trade dress dilution the plaintiffs must demonstrate: (1) that their own trade dress that is "distinct and famous;" (2) that Iran adopted the plaintiffs' trade dress after it had become famous; and (3) that Iran's use of the trade dress dilutes the

famous mark. 15 U.S.C. § 1125(c); *see also Clinique v. Dep Corp.*, 945 F. Supp. 547, 561 (S.D.N.Y. 1996).

The plaintiffs have demonstrated that they own the trade dress of the 206 Model Helicopter Series and that said trade dress is distinct and famous. Tr. at 29-31, 33-35, 41-42. Further, they have established that Iran adopted the plaintiffs' trade dress well after the trade dress had become famous, *id*. 19, 27-28, 43, and that Iran's use of their trade dress dilutes the plaintiffs' famous mark in two ways: blurring and tarnishment. *See* Tr. at 42-46.

"Dilution by blurring occurs 'when a defendant uses a plaintiff's [trade dress] to identify the defendant's goods or services, creating the possibility that the [trade dress] will lose its ability to serve as a unique identifier of the plaintiff's product.'" *See Times Mirror Magazines, Inc. v. Las Vegas Sports News*, 1999 WL 124416, at *5 (E.D. Pa. Mar. 4, 1999) (*quoting Panvision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1326 n.7 (9th Cir. 1998)). The plaintiffs have demonstrated that purchasers of the Shahed 278 or the Shahed 285 helicopters may believe they are purchasing a 206 Model Helicopter Series helicopter because of the similar trade dress. Tr. at 44-46. Thus, Iran's manufacture and sale of the Shahed 278 and Shahed 285 cause the 206 Model Helicopter Series trade dress to lose its unique indentifying characteristics through blurring.

Iran's use of the plaintiffs' trade dress also results in tarnishment. Tarnishment occurs when the goodwill and reputation of a plaintiff's trade dress are linked to products which will "conjure associations that clash with the associations generated by the owner's lawful use of the mark." *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 31 (1st Cir. 1987). The plaintiffs have demonstrated that Iran's Shahed 278 and Shahed 285 are likely of a lower quality and likely have poorer performance characteristics than the 206 Model Helicopter Series. Tr. at 41, 44.

7

That is, when a consumer purchases a helicopter or parts from Iran believing they are purchasing a 206 Model Helicopter Series helicopter or parts and the product is substandard, it will tarnish the plaintiffs' reputation and goodwill. Accordingly, the court concludes that Iran is liable for trade dress dilution by blurring and tarnishment.

### D. Damages

Pursuant to the FSIA, a foreign state is liable in the same manner and to the same extent as a private individual under like circumstances. 28 U.S.C. § 1606. The plaintiffs here request both injunctive and monetary relief. *See* Compl. ¶¶ A-F.

#### 1. Injunctive Relief

"The owner of a famous mark . . . shall be entitled to an injunction against another [entity] who, at any time after the owner's mark has become famous, commences use of a mark . . . in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark." 15 U.S.C. § 1125(c)(1). As elaborated above, by manufacturing helicopters similar to the 206 Model Helicopter Series, Iran has blurred and tarnished the plaintiffs' trade dress. *See* Part III.C.2; *see also* Tr. at 39-44, 46. Because the plaintiffs have demonstrated that Iran will continue to engage in activities infringing on the plaintiffs' trade dress, *see* Tr. at 22-23, the court grants the plaintiffs the relief they seek and enjoins Iran from manufacturing products that infringe on the plaintiffs' trade dress, namely the Shahed 278 and Shahed 285.

#### 2. Monetary Relief

Pursuant to 15 U.S.C. § 1117(a), a victim of trade dress infringement and dilution is entitled to recover (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. Moreover, as the plaintiffs have demonstrated that Iran intentionally infringed on their trade dress, Tr. at 53, the plaintiffs are entitled to treble damages and

reasonable attorneys' fees, 15 U.S.C. § 1117(b)(1). In addition, because this is a counterfeit case, the plaintiffs are entitled to pre-judgment interest on the damages as calculated from the date of service of the complaint, July 30, 2007, through the date of the judgment. *See id.* § 1117(a)-(b).

The plaintiffs assert, and Iran concedes through default, that in the absence of evidence of Iran's actual profits, the amount of damages the plaintiffs are entitled to is the amount of profit from spare parts sales that the plaintiffs would otherwise earn on a 206 Model Helicopter Series helicopter over the estimated twenty-year lifespan of the airframe for each of the thirteen Shahed 278 and Shahed 285 helicopters manufactured by Iran. Tr. at 48-49, 53. Because Iran's profits cannot be assessed, "the court may enter judgment for any sum above the amount found as actual damages, not exceeding three times such amount." *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 620-21 (9th Cir. 1993); *see also* 15 U.S.C. § 1117(a). The plaintiff's profits for each Bell Model 206 helicopter are based on the sale of spare parts during the typical twenty-year life of a helicopter. Tr. at 48. Spare parts are sold for a total of $800,000 over the course of the twenty-year span, of which the plaintiff retains $500,000 as profit. *Id*. at 49. Accordingly, the court awards $500,000 for each of the thirteen Shahed 278 and Shahed 285 helicopters manufactured by Iran, *id*. at 53, totaling $6,500,000, in damages, which the court trebles to $19,500,000, *see* 15 U.S.C. § 1117(b)(1).

Additionally, the court awards the plaintiff pre-judgment interest. *See* 15 U.S.C. § 1117(b). The rate of pre-judgment interest is calculated at the rate prescribed by § 6621 of the Internal Revenue Code. *See* 15 U.S.C. § 1117(b); 26 U.S.C. § 6621(a)(2) (interest shall be calculated as the federal short-term rate plus three percent). The federal short-term rate is 0.51%, which entitles the plaintiffs to 3.51% annually. Accordingly, on a judgment of $19,500,000, the

pre-judgment interest, compounded annually over three years and twenty-eight weeks at a rate of 3.51%, equals $2,535,002.28. The court also awards the plaintiffs post-judgment interest at a rate of 0.28% pursuant to 28 U.S.C. § 1961.

Lastly, the plaintiffs are entitled to reasonable attorney's fees pursuant to 15 U.S.C. § 1117(b). The court concludes that the affidavit submitted by the plaintiffs reasonably explains the fees sought, *see* Pl.'s Post-Trial Br., Aff. of Atty. John G. Sams, and awards the plaintiffs $497,125 in attorney's fees.

## IV. CONCLUSION

A Judgment consistent with these Findings of Fact and Conclusions of Law is separately and contemporaneously issued this 11th day of February 2011.

RICARDO M. URBINA
United States District Judge